21-905. Mr. Ta. Good afternoon, your honors, and may it please the court. I'd like to use my time to address two issues, your honors. First is why wrongful refusal was adequately alleged at the motion to dismiss stage to the extent that it is a requirement under New York law. And second, why plaintiff section 14a claim was not subject to refusal by the board in the exercise of its business judgment. Turning to the first issue, your honors, this case presents an important issue concerning the demand refusal requirement in New York. If a derivative plaintiff shareholder is required to first make a demand on the corporation's board and then demonstrate that the demand was wrongfully refused, that requirement can only work if the board or its that addresses thoroughly the issues raised in the shareholder's demand. And just as importantly, if the board and its committee documents its findings and its conclusions, so the shareholder can understand the reasons for the board's decision. Without these two simple steps, the whole demand refusal requirement would simply break down because a shareholder will be put to an impossible burden. Under Rule 23.1, a shareholder has to allege with particularity that its demand was wrongfully refused, but a shareholder can't discharge that burden if the board hides its reasons for refusing the shareholders demand. So turning to the facts, what says that there has to be a full explanation of the board's reasoning? It goes to the extent that demand refusal, pleading wrongful refusal, is a requirement in New York, Your Honour. It is simply Rule 23.1, I think, is the source of that obligation because a shareholder has to plead why its demand was wrongfully refused. And a shareholder can't do that if a board doesn't explain its reasons. And I think this is consistent with all the decisions of federal courts, the Chancery Court in Delaware, where they've explained that it's not permissible for a board to conduct an summary conclusory explanation for why it rejected the shareholder's demand and expect the shareholder to allege with particularity the requirements that its demand was wrongfully refused. In this case, Your Honour, plaintiff identified misconduct that was of indisputable corporate governance significance. That is the misuse of corporate assets, specifically corporate jets, at the expense of the company by the chairman of the board and the two most senior officers of the company. So this reached right to the very top. And these individuals even permitted their family members and their friends access to these jets to make personal trips, again, at the company's expense, almost like turning the keys to the corporate vault over to non-employees. This looting of corporate assets went on for years. It cost the company millions of dollars. It was not disclosed to shareholders. And in response to plaintiff's investigation, the board appointed a special committee. But the special committee made a tactical decision in this case to prepare a five-page report, a report sans content, to use the language of the Chancery Court in Morgan Stanley, right? So in the report, the special committee nowhere addresses these two issues. It nowhere addresses the use of the corporate jets by the family members and friends, even though this use directly violated the company's code of business practice. In the report, the special committee also failed to properly investigate with a certain... In your demand, the demand laid out what the allegations were, what the bleeps were as to misconduct. And the complaint alleges that, indeed, the special committee made findings with respect to the demand. Doesn't that suggest that, indeed, they looked at these things? And just because they didn't explain it, that doesn't mean that they didn't consider these things. Well, that's the point, Your Honor. We're alleging that the record does not show that the special committee looked at these two issues, the issue of the non-employee flights and the issue of whether certain international flights made by a different handler to Australia, New Zealand, Mexico, and Italy were properly misclassified as business. So that's our allegation. And what the district court held in this instance was to suggest that, well, just because the issues weren't specifically identified in the report doesn't necessarily mean that the special committee failed to review these issues. But, Your Honors, at this stage, at the motion to dismiss stage, I think that's exactly the inference that should be drawn. And it should be drawn in plaintiff's favor. The special committee's burden was to provide reasons to shareholder to explain why its demand or his demand was wrongfully refused, was refused, and then allow plaintiff to allege the requirements under Rule 23.1. I have some questions for you. I'm sorry. I don't want to cut off your answer. But before you proceed to something else, have you finished your answer? Yes, Your Honor. All right. I have some questions for you with respect to the accusation, the allegation of violation of 14A with respect to the proxy statements. You seem to be, if I understand you correctly, and I find the pleading somewhat confusing, you seem to be alleging that the proxy attribute to personal travel, I'm sorry, failing to attribute to personal use of the planes by these executives, any portion of fixed cost that is represented by the use of seats on the plane for personal use. In other words, so that if an executive took a business trip, let's say, flying to New Zealand on business, unquestionably on business, but brought with him five or 10 members of the family and friends, that you are arguing that if it was 10 members, nine-tenths or 10-elevenths of the fixed costs attributable to the maintenance of the airplane should be deemed to be personal travel as opposed to business travel. Although the plane would have made exactly the same trip, and the fixed costs would all have been exactly the same, no matter how many family members the person brought with him. Are you making that argument? Not quite, Your Honor. The argument is this, that when an executive flies with his or her family members and friends, all the costs attributable, the percentage of the aircraft's operational, not just fixed, but operational and fixed costs attributable to that, to those personal passengers and to the executive, are disallowed as tax deductions under the IRS tax code. So you're not saying that fixed costs should be attributed to personal travel. You're saying this is a matter of losses experienced by the company because the IRS will not allow the deduction of costs beyond 100 percent usage by the executive for business purposes. In other words, if on every flight, let's say that during a year, on every flight that was made for business, all the flights were made for business purposes, but in each case, three family members went along, you're saying that the IRS will disallow the deduction of three quarters of the expense of maintaining the plane. Is that what you're saying? That's correct. And three quarters, not just the expense of maintaining the plane, but three quarters of the operational costs of making those flights. So the fuel, all right, but you have not. But so far as I could discern, you have not laid out in your pleading internal revenue rules, rulings, regulations, statutes that say that I don't find in your, you may be right. I have no idea whether you're right or wrong, but I'm assuming that the internal revenue code and the regulations and so forth are consistent with what you're saying. I couldn't see anything in your pleadings that show us that. Your Honor, we do actually allege it's section 274 of the IRS code. And what we explained was that section 274 is the disallowance provision. It disallows these fixed and operational costs attributable to personal use. And so what we are- Yes, yes. It disallows costs attributable to personal use, but it doesn't show that, I mean, what is meant by personal use. You are saying that when an airplane flies a business purpose trip to whatever destination, that the presence of one extra person, let's say the executive brings his wife with him on the trip or her husband with her on the trip, you are saying that under IRS rulings, only 50% of the costs of that trip will be deductible because you say that's a standard that the IRS uses. But that's certainly not clear in any way, or even suggested by the terms of 274. 274 could just as well mean that when an airplane flies somewhere for an exclusively personal purpose with no business purpose whatsoever, that's personal use. You make reference to the, you make reference, I believe, to a standard of seats filled or a percentage of seats filled or percentage of miles traveled, whatever it is. But I don't see those in anything that you've cited. Your Honor, to answer that question, I think we did allege with particularity section 274, we explained how occupied seats, miles and occupied seats. Section 274, you explain it, but you don't attribute your explanation to any internal revenue code documents. 274 doesn't say anything about percentage of seats filled. So to the extent, Your Honor, that you believe that we should have played with particularity the regulations pursuant to that issue, pursuant to 274, I think that should have been an issue, something that we should have been able to amend the complaint. And I would point this out, Your Honor. Your complaint simply doesn't substantiate that the Internal Revenue Service disallows deduction on the basis of passengers, non-business travelers who accompany the executive on a business trip. It doesn't show anything that supports that. Your Honor, can I make two or three points about that? First of all, this was never an issue raised by the defendants. They've never contested our understanding of section 274. Secondly, subsequent to our investigation, the company has started disclosing the disallowed tax deductions. So that's already a benefit that we've obtained for the company. And we mentioned this and we alleged this in the complaint. And the defense counsel, my friend, Mr. Wang, will not dispute that. They've already started disclosing the disallowed tax deductions as a consequence of our investigation. And third, Your Honor, I think to the extent, as I said, Your Honor believes that this could have been pledged with greater particularity. We believe that we already alleged it with particularity, the operation of section 274. It is, you know, no displeasings under Rule 8. So to that extent, if there were deficiencies, that should have been something that should have been, we should have been afforded the chance to amend to specify the precise regulation. But Your Honor, in addition, I'd like to point this out, that it's not just the failure to disclose the disallowed tax deductions. That's wrong with the proxy statements. We've identified two or three other aspects of the proxy statements that were misleading. One was the company in its proxy statements every year states that the planes are business aircraft, when, as we've alleged, 70% of the use of these of these three planes was for personal reasons. The company also has disclosed... Wait a minute, 70% of the usage was for personal reasons, but you're saying you're saying that when an executive spouse accompanies the executive on an unquestionably business trip, that trip is only 50% for business purpose. That's a highly questionable proposition. Well, it's how Section 274 works, Your Honor, and our pleading was based on internal company documents showing their own disallowed tax deductions. So this is based on the company's own books and records showing the percentage of disallowed tax deductions, personal versus total business use. And another aspect of the proxy statements, that was misleading, was the fact that the company repeatedly stated in its proxy statements that the fixed costs of the aircraft would have been incurred regardless of the amount of personal use. And that's not correct. Clearly, in this instance, because a substantial portion of the fixed costs are being disallowed by the IRS, the fixed costs and the disallowed tax deductions are a direct result of the personal use. So for all these reasons, Your Honors, we believe that we adequately alleged a Section 14a claim that the statements by the company and the company in its proxy statements year after year were misleading. The District Court didn't find that we had failed to adequately allege misstatements. What the we had adequately alleged causation. And with respect to that, we would direct Your Honors to this court's decision in Galef. This court in Galef said, the injury, the causation is present because the injury in this instance, is the election of the directors themselves. So when directors as in this case, elected based on false and misleading statements as to the amount of use. And they're elected based on that, that itself constitutes causation. And I quote, from this court's decision in Galef, the court said, quote, there appears to be, there appears to be alleged a sufficient causal link between the claimed non disclosures in the proxy statements, and the elections, which the statements sought to influence. And to the shareholders also to shareholders also vote on executive compensation? Not directly, Your Honor. So in this instance, what they were voting on was the election of the directors, whether they should be returned on to the board. And what we're alleging is that as part of that process, they, they disclosed to shareholders what the directors are paid. And in this case, what the director offices were going to be paid. And part of that disclosure included this allowance of $350,000 a year for personal use. And what we're alleging is that that was misleading for all the various reasons that we I previously discussed. And so because you are you alleging also, are you alleging also that, that it's a fair inference, that if a full disclosure along the lines that you suggest, was was required, would show that three, that three executives cost the company $26 million in lost tax benefits by by using company planes for family, for family purposes, that those executives wouldn't do that? Well, we don't need to show to show that we need to show is that I didn't say you needed to, I asked you whether that is an argument that could benefit your case. It's certainly your honor, if what we're arguing is, is that what we're alleging is that if there was full disclosure, then these directors may not have been returned, and or returned on a different compensation basis, with different perquisites being awarded to them, that I'm suggesting a different a different approach to loss causation, that that even if the court were not willing to accept your proposition, that they wouldn't have been elected at all, that the that the company would be saved millions of dollars, because upon a full disclosure requirement, the directors wouldn't do something so embarrassing as to send 20 members of their family and friends to Tampa Bay for a football game. Exactly, your honor. And we agree with that or the amount of disallowed tax deductions, which is, as we say, as we allege a proxy for the amount of personal use, if you look at that, that has decreased since our investigation started. So certainly, your honor, that would be another way to view causation as having been adequately alleged here. So yours, just to wrap up this point by section 14. A, this was causation was the only issue focused on by the district court in terms of the section 14a claim. And what this court held in Galef was a very straightforward proposition, actually. And it was that if a section a section 814, a claim that is adequately pled against the directors of a board cannot be summarily dismissed by those same directors pursuant to their business judgment. And the this court went through the policy reasons, the federal policy reasons underlying section 14a, which include the vital goal of corporate suffrage, and ensuring that shareholders when their votes are solicited, that they're provided with all material information, and that it would undermine this legislative purpose, if a an interested board could summarily turn around and dismiss a claim that's been adequately pledged against them. So you say the you say that the independent, the independent special committee, the independent directors who constituted the special committee, were not disinterested, they were interested because, because the the demand the suit and demand, accused them of personal misconduct in their approval of the proxy statements that misrepresent that misrepresent the executives usage of the planes. That's correct. You represent the, the the cost to the company of that, of that usage, and it misrepresents the, the, the, the earnings, the earnings of those executives in that, in that all those costs to the company would be, I mean, the benefit of that family usage should be attributed to those executives as as pay. That is correct. You're on your honor. And so I think it comes back down to, I just wanna make one point because I know I'm short on time, but Galef concerned the decision as your honors know, to dismiss a lawsuit that was already commenced. And this case concerns a situation where the board rejected a demand by a shareholder, in Galef, this court pointed out that the two situations are functionally the same. So to the extent that Galef applies here because these directors were interested as you wanna judge Laval just pointed out the two directors on the special committee, they named as defendants in our complaint. They named as defendants because they were there since 2013 and they issued, they issued and approved these proxy statements. All the director defendants on the board, when that board turned around and approved the recommendation of the special committee, all of them are named as defendants because they too have been there since 2013 and they have approved the proxy statements. So, because- Let me ask you a question to wrap up here on something you've touched on. Help me understand the claims that you've made. I take it that you've made no claim that the board members apart from Friedman, Handler and Steinberg had a conflict of interest. Is that right? Well, let me put it this way, your honors. Those three defendants are the three defendants who participated in the misuse of the corporate jets. So to that extent, they are interested. The other directors are interested to the extent that they approved the proxy statements and to the extent that they breached their fiduciary duty of oversight and to the extent that they approved a one-page policy back in 2012. So apart from Friedman, Handler and Steinberg, for purposes of your 14A claim, you do assert 14A claims against the board members apart from Friedman, Handler and Steinberg. Is that right? That is correct, your honor. We basically assert this 14A claim against all the director defendants. Okay. But you're accusing them of misconduct directly in violation of federal law in their approval of a misleading proxy statement. Yes, your honor, that is correct. And we're not accusing the other directors, the non-officer director defendants, we're not accusing those directors of engaging in the actual misuse of the corporate jets themselves. Okay. Well, thank you, Mr. Tom. And we'll hear- Thank you, your honors. We've, of course, received a substantial amount of extra time, which we appreciate, actually. And we'll turn to Mr. Wang. Good afternoon, your honors, and may it please the court. George Wang from Simpson Thatcher and Bartlett for the defendants. Let me begin with the last point that the panel focused on with Mr. Tom. On the issue of interestedness, there's absolutely no complaint of interestedness by any of the non-executive directors. If you look at paragraph 123 of the complaint, which is on page 847 of the record, the plaintiff, this is a section on why the demand refusal was wrongful. And he pleads very clearly that the board and the special committee's rejection of plaintiff's demand was wrongful because the board and the special committee failed to adequately inform themselves of material information and therefore acted unreasonably. So that's a process challenge, and I'll get to that in a moment. But I welcome the panel to read this entire five pages on demand refusal in its entirety. There's no allegation of interestedness of any of the special committee members or any of the non-executive directors. Well, the issue with respect to demand and refusal isn't the issue that the plaintiff was addressing. The plaintiff's proposition in support of interestedness with respect to the 14a claim, as I understand it, is that these directors are accused of having themselves engaged in misconduct directly in violation of federal law, being section 14a, by approving, by having earlier approved proxy statements that misleadingly misrepresented the executive's use of company airplanes. And so they are essentially, in turning down the plaintiff's demand, they're saying, no, we're not going to approve the demand that we be sued for our misconduct in approving misleading proxy statements. That's the source of the interest that the complaint accuses them of. That's what plaintiff is claiming today. Now, that is not in the complaint. That is not in the district court briefing. It is not in the appellate briefing. There is no claim in any of the above. And I welcome the panel to review all those papers in their entirety. There's no claim of interestedness in either the pleadings, the facts asserted. The facts asserted say that the board approved proxy statements that contain misstatements of the fact of executive compensation and misstatements with respect to the use of the airplane. Does one have to say that's bad? That's wrongful? That's misconduct? I mean, it's an accusation of misconduct in approving the proxy statements. Well, two points, Your Honor. Number one, again, it's not in the pleadings. And number two, many courts have held, including in this circuit, that the fact that defendants are named in a 14a claim, which is not uncommon, that doesn't make them, the directors are named, that doesn't make them biased or have a conflict of interest for purposes of evaluating whether the business judgment rule should be applied and the company should pursue a 14a claim. There are numerous courts that have held that. This court in the Lewis case has held that in the context of demand excuse, demand futility. I understand that's a little bit different than a wrongful refusal case, but courts, including Judge Caproni in the Gold case and the St. Clair case, have specifically allowed directors in their business judgment to dismiss 14a claims, even where they are named as defendants. And the theory underlying that is explained in this Court of Bromelwood's decision very well, which is that there's no inconsistency between the business judgment rule and the put the directors in a position to judge whether there's a violation or not. That's for a court to determine. But to the extent the plaintiff wants to pursue a claim derivatively as opposed to directly, then the plaintiff is the company, the corporation, and it's up to the company and corporation to decide whether or not to bring that claim or not. 14a claims are brought as direct claims all the time. So Judge Caproni in the DeKalb case, for example, dealt with a three-year statute of repose issue in a different 14a claim. That was a class action 14a claim. And again, there's plenty of cases where 14a claims are brought as a direct claim. But where a plaintiff seeks to proceed derivatively, what the Abramowitz Court held is that the business judgment rule applies, and that's following the Burks v. Lasker Supreme Court decision. And in terms of the consistency between the business judgment rule and federal policies underlying the securities laws, there is no inconsistency in allowing directors in their business judgment, so long as they act in good faith and do a good faith review of the claims presented. Let me bring you back to the review and the adequacy of the investigation. The complaint does allege that it was inadequate, identifies several issues as to which the complaint believes or asserts that the investigation was inadequate. Is this a factual question? Can it be decided on a 12b-6 motion? Well, it absolutely can be, whereas here there are complete deficiencies in the pleadings. And what the plaintiff sort of disguises is what the standard here. The standard is outlined by the New York Court of Appeals in Auerbach. New York Court of Appeals in Auerbach. And the standard is there the New York Court of Appeals expressly instructed that, quote, courts cannot inquire as to which factors were considered or the relative weight accorded them in reaching substantive decisions, end quote. It stated differently, quote, what has been uncovered and the relative weight accorded in evaluating balancing the several factors are considerations beyond the scope of judicial concern, end quote. So he complains about the lack of detail in the nitpick, you know, this flight, this flight, what was the reason for this? That's exactly what he's prohibited by Auerbach from doing. What is he allowed to do? He's allowed to inquire into whether the areas and subjects examined are reasonably complete and whether there's been a good faith pursuit of inquiry into such areas and subjects. Both those things are arguments as to what's wrong with the decision if it doesn't know what the reasoning is. He's not allowed to second guess the reason. He's allowed to challenge whether or not the areas and subjects covered were appropriate. He's allowed to challenge whether or not there is a good faith pursuit. And that this report allows him to evaluate because it outlines the steps taken to appoint independent members to the special committee, the retention of the number of people interviewed, the number of documents reviewed, things along those lines. There's no case he cites anywhere, federal court, state court, which holds that a report similar in nature to this, under New York law at least, is insufficient because this gives him what he needs in order to challenge the good faith pursuit of the inquiry here. So unquestionably here, the areas and subjects investigated were the areas and subjects that he put in his demand letter. He asked his demand letter, it's 11 pages long, but it revolves around two things. One is going flight by flight and saying this should have been personal rather than business. This flight should have been personal rather than business. And number two, he quibbles with the tabulation of the valuations of particular flights. Those were the subjects that were centrally analyzed by the special committee and by the board. And he does nothing to undermine or question or call into reasonable question the appropriateness and good faith of those inquiries. And that can be adjudicated as a pleading issue because keep in mind what the standard is under the New York Court of Appeals Auerbach decision, which is they have to show – the plaintiff has to plead facts to suggest that the process was, and again I quote, so inadequate as to suggest fraud or bad faith, end quote. That's the standard. Stated differently, again Auerbach, got to show that the investigation was, quote, so restricted in scope, so shallow in execution, or otherwise so pro forma or half-hearted as to constitute a pretext or a sham, end quote. The report's got plenty in there to show that that high standard is not remotely standard satisfied. Mr. Warren. I want to ask you, I'm sorry, go ahead, Judge Cabranes. I wanted to ask you, first of all, whether the – as to what you said earlier about 14a cases is not contradicted by Gallef, the Burks case, and the implication of Abramowitz v. Posner, the implication that a director must be otherwise disinterested in order to be immune in these circumstances. But with respect to the 14a claim, I want to ask you, what is wrong with the proposition that a director cannot be deemed disinterested in the face of an accusation that the director has approved a proxy statement that wrongfully conceals from the shareholders and misrepresents that executives of the company have cost the company $26 million in tax exemptions by making the company's airplanes available to their family members for vacation travel? What's wrong with the proposition that such an accusation against a director that you approved very importantly misleading proxy statements that seriously underrepresented the cost to the company and the benefit received by the executive through as a result of taking their family on pleasure trips on company business airplanes? So let me answer your two questions in reverse order. This court has held, and district courts in this circuit have held, that the fact, the accusation in a demand letter and the naming of directors as defendants doesn't make directors self-interested. I didn't say the naming. I didn't say the mere naming. I said the inclusion of those specifications as to how the company was cost $26 million in tax benefits. I agree completely that you can't just make the director interested by naming him as a defendant. But it's with my question implies the substantiation of explaining how the company was cost $26 million by the abusive carriage of family members on pleasure travel. But there's two points here. One is, as your honor noted earlier, the figures that the plaintiff uses to concoct this story that 70% of usage was personal and it's $26 million, those are entirely fabricated figures which have nothing to do with what's properly reported in the SEC filing. As a plaintiff acknowledges in his own papers, it's the SEC's guidance which is different as he acknowledges from the IRS guidance or rules. The SEC rules govern what is required to be put in the corporate disclosure about purposes given to employees. And under the SEC rules, you use an incremental cost calculation which looks at the incremental cost of personal travel. So that's the relevant standard and the percentages are nowhere near. They're a small fraction of this 70% figure or the $26 million figure. But he says his point is that it would cost the company money. His point is that under the IRS rules, that if the plaintiffs were merely, if the issue were simply how much personal travel was there, that would be one thing. But he's saying that what is misleading about the proxy statements is that they make representations that conceal the fact that the company was cost $26 million in lost tax benefits by the carriage of family members on pleasure travel. No, I respectfully earn I don't think that's what he's pleading that the figure $26 million just is apples and oranges has nothing to do with it with what the disallowed tax allowances actually were. The company as as Mr. Todd correctly pointed out the company over the past three years has reported the amount of disallowed tax deductions. It's a small fraction of $26 million and it has not moved the needle at all on on the director reelections which have been by 90% so that's after but that's after the company started reporting it. But that's after the and that that kind of makes the plaintiff's point that makes the plaintiff's point that when directors are when when the director's use of personal travel is going to be reported in the proxy statements to the shareholders, they're not going to do things like like take 25 of their family and friends and send them to to Tampa Bay for a football game if that's going to be reported to the shareholders. Well, no, it's just an incorrect factual premise. It's just flatly false that there's a dramatic difference in in the usage of the plane today as before and and that usage has to do obviously that there was a drop over the past year and a half and that's due to COVID, right? So there's no doubt about that. But there the the personal usage figures and the disallowed tax deduction has not significantly changed leaving aside COVID over the past several years. So this notion that it used to be 26 million, it's not pled in the complaint that that the disallowed tax deduction would have been 26 million and it would be incorrect if that were pled in the complaint. That's just a completely fabricated figure which has no bearing in terms of what the actual tax deductions allowances were. But but all of this you know returns to the point that these are substantive questions which are expressly excluded from the province of the court's consideration under the New York Court of Appeals' decision an hour back, right? These are the questions which the special committee and the non-executive directors were called upon to evaluate and and consider along with all other relevant factors in their evaluation of plaintiff's demand. And and I see I'm significantly over in time like my colleague was but but what another thing I would like to point out is this notion that the demand letter accused the directors of wrongdoing is just not consistent with the actual demand letter. And again I welcome the court to look at the demand letter. It's at A201 through A211, right? The demand letter revolves around accusations that the three executives misused the corporate airplane, did personal travel, and that the company put out a proxy which wasn't accurate. All that's in there but you read it from start to finish. None of the directors are name by name. There's no discussion of duty of care, duty of loyalty. There's no claim in there of wrongdoing by the directors. The closest that it comes is the very end in the in like after 11 pages there's there's this boilerplate discussion that you know I Mr. Rubinstein demand the board take the following immediate actions to remedy the potential misconduct and breaches of fiduciary duty by lucidia's officers directors and any other responsible persons. So it's got the word directors in there but but I respectfully suggest any fair reading of this document would make clear that the direct the officers the people they're talking about the people that are focused the people that are accused of wrongdoing in this demand letter are not the directors but the three if you look at the complaint and and I've said this many times you look at the complaint the the briefing below the appellate briefing he doesn't make a claim of interestness of these directors that that was made for the first time in light of the panel's request for submission of letter briefs on November the 1st. All right Mr. Wong let me just ask you about the cases that have allowed 14a claims based on inaccurate disclosures of executive compensation those two I guess would be gallop and then Maldonado against Flynn right I'm sorry the question is about the cases that have allowed 14a claims you know okay so so in 14 in Gallif the court was presented with a question of whether it was under Ohio law so not New York law and and they were applying the court's supreme court decision in Brooks v Lasker right so the court analyzed the question of whether or not under Ohio law the directors in that case were interested or not and and this court determined that it was unclear and reversed and remanded to district court to adjudicate whether or not the Ohio under Ohio standards the the directors were interested right and it offered commentary in that case about how it was skeptical and thought that any if you if you had to reach the second prong of Gallif they they thought that the fact that the directors were named as defendants would make them what would create some inconsistency between the business judgment rule and the app and 14a okay so that discussion is in Gallif but it's dicta because they they they decided and they held that that the court the plaintiff had sorry the defendant had had had failed to show that the first prong of Brooks v Lasker was was satisfied so hence there was no need to get to the second prong if you look at other cases that have dealt with 14a you have in the ninth circuit uh the Lewis v Anderson case and the Litton case and in the eighth circuit the Abbey case and here with but in our circuit in our circuit you have the Gould case by Judge Caproni involving Bank of America and the St. Clair case both of which in the court of appeals you only have Gallif and Maldonado right well Abramowitz doesn't directly deal with the uh the 14a claim but it deals with a 10b claim under the same statute the 1934 exchange act and it expressly in that opinion characterizes the two as analogous and it cites the district court's opinion in Maldonado explaining why a section 14a claim um sorry the application of the business judgment rule to allow the dismissal of a 14a claim is is consistent with public policy so it cites that in a long block quote and then it says for similar you know it finds the reasoning persuasive uh and and basically reaches the same result in well we've had the opportunity to hear give you some quite a substantial additional time but we can ask Mr. Tai if you would wrap it up with a two-minute rebuttal thank you your honors i'll be very very quick um let me turn to the uh point about disinterestedness in the context of a section 14a claim and Mr. Wang's um contention that this was not raised in any of the pleadings or the briefing below um i think the answer lies in what Judge LaValle said a the contention that a section 14a claim cannot be dismissed by a board under the business judgment rule is not a factual allegation concerning why demand was wrongfully refused it is a legal argument as Judge LaValle said it is a conclusion of law and at the motion to dismiss stage we appropriately argued that section 14a that the section 14a claim could not be dismissed pursuant to the business judgment of the board we raised it at the um at the district court level and we raised it in our so we preserved that issue um uh just let me quickly make this point too um in response to one of Judge Chin's questions um whether this could be decided on a motion to dismiss i think this is one of those cases that shows that when it comes to pleading wrongful refusal and it comes to a defendant trying to show that wrongful refusal has not been met this is one of the most intensively factual questions that there is and this is why we believe the district court erred because district court erred through inferences in favor of the the special committee how do you respond to the argument that we're not supposed to get into the reasoning if the business judgment rule applies uh and and what is here to show that the investigative procedures were shallow sham or half-hearted pro forma uh etc um i think the answer is straightforward your honor it goes to the scope what we're arguing is that there were issues here that the special committee should have looked at and it failed to look at these issues so our complaint is as to the scope so in other words it's what our back refers to saying that if the methodology if the procedures and methods used by the special committee were so restricted in scope then we have shown um that demand was wrongfully refused so that's i think that's that's the the the answer um and just one final point your honors um all of this has been predicated on our on the view that demand refusal and wrongful showing wrongful refusal is even required under the new york business corporation law section 626 c and we've extensively briefed the point that we don't believe uh if your honors were to find that demand was not that wrongful refusal was not adequately played here we would under section 6216 we would rest on our submissions in our briefs your your adversary says that your uh your contention that uh that there was a loss of 26 million dollars in tax in tax benefits because of the use of of the planes for carrying family members uh was something fabricated made up out of whole cloth uh that's not substantiated in any way uh what do you say and and that's completely i i don't understand how he came up with that that argument put it this way your honor just last year uh last year and in in the the cost of the disallowed tax deductions i think for 2019 or 2020 i forget which year was like four and a half million dollars as disclosed by the company in its proxy statement for one year and this was after our investigation and after your as as your honor pointed out the directors the director defendants here the office defendants here presumably toned down the use of the personal jets after our investigation and that was four and a half million dollars so um our allegation of 26 million dollars is based on their documents they produced a um cost documents disallowed tax deduction documents for one year and our um we extrapolated from that based on the amount of personal use in the previous years to come up with the disallowed tax deductions because the company tried to withhold the figures from us which would have allowed us to allege it adequately in the complaint thanks mr ta very much thank you honest we thank mr time mr wang for excellent arguments we'll reserve decision